**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**MITCHELL O. LINEHAN,**

    **Plaintiff,**

**vs.**                                               **Case No. 4:06cv225-MP/WCS**

**JAMES V. CROSBY, JR.,
JAMES R. McDONOUGH.
ALONZO PERKINS,
and ALEX LAM,**

    **Defendants.**

_____/


**REPORT AND RECOMMENDATION**

This is a suit by Mitchell O. Linehan, *pro se,* a state prisoner, brought pursuant to

the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.

§ 2000cc et seq., and 42 U.S.C. § 1983.  Doc. 36 (amended complaint).  Defendants

filed a special report, construed as a motion for summary judgment.  Doc. 53.  Plaintiff

was given instructions concerning his responsibility to file a response to this motion for

summary judgment, and a date was set for taking it under advisement.  Docs. 54, 62,

and 80.  Leave was granted to conduct some discovery.  Doc. 69.  Plaintiff filed a

response.  Doc. 79.

Plaintiff filed his own motion for summary judgment.  Docs. 70 (motion), 71 (statement of material facts), and 73 (supplement).  This superseded an earlier motion.  See Doc. 59 and 62, p. 4, ¶ 4.  The motion is supported by affidavits.  Docs. 66, 67, and 74.  Defendants filed a memorandum in opposition.  Doc. 77.  A date was also set for taking Plaintiff's motion for summary judgment under advisement.  Doc. 80.  Plaintiff filed a reply.  Doc. 84.

Upon review of the motions for summary judgment, an order was entered giving Defendants an opportunity to address Plaintiff's Equal Protection claim for monetary damages for failure to provide a kosher diet during the period that a kosher diet was provided to Jewish prisoners.  Doc. 86.  Times for a supplemental motion for summary judgment and Plaintiff's response were provided, and the supplemental motion, if any, was to be taken under advisement on June 18, 2008.  *Id.*  Defendants filed supplemental motions for summary judgment, docs. 87 and 88, and Plaintiff responded.  Doc. 89.  All of the motions for summary judgment are now ready for a ruling.

**Allegations of the amended complaint, doc. 36**

Plaintiff is an adherent of the Seventh-Day Adventist faith.  Doc. 1, p. 2.  He is housed at Everglades Correctional Institution in Dade County, Florida.  *Id.*, p. 4.  As a Seventh-Day Adventist, Plaintiff sincerely believes that he must keep a kosher diet as provided in the Bible, notably, the books of Numbers, Leviticus, and Deuteronomy.  *Id.* This requires that he eat non-animal food products, meat from cows, sheep, poultry, fish with fins and scales, but dairy and meat should not be mixed.  *Id.*, pp. 4-5.  Kosher food must be prepared with kosher utensils and containers that have not been in contact with non-kosher food.  *Id.*, p. 5.  Plaintiff states that the kosher diet that he needs can be

prepared "on site with proper kitchen facilities under the direction of a qualified kosher food supervisor," or by obtaining packaged meals or kosher products from kosher food vendors.  *Id.*  Disposable goods and utensils are "an easy, cost-effective and religiously acceptable means of providing kosher food in an institutional environment."  *Id.*, pp. 5-6.

Plaintiff alleges that Pastor Maxwell T. Berkel of the Perrine Seventh-Day Adventist Church wrote a letter to Chaplain Lam at Everglades Correctional Institution asking that a kosher diet be provided to Plaintiff, but Defendant Lam did not respond. *Id.*, p. 16.  On April 1, 2004, James Crosby, then the Secretary of the Department of Corrections, implemented a program for providing a kosher diet to prisoners of the Jewish faith.  *Id.*, p. 6.  To be allowed to participate, a prisoner had to list "Jewish" as his religious preference in his file.  *Id.*  Plaintiff alleges that he is not accommodated similarly with respect to his dietary beliefs because he listed "Seventh Day Adventist" as his religious faith.  *Id.*, p. 7.  Petitioner alleges that he requested permission to participate in the Jewish kosher diet and was refused because that was not his religious preference.  *Id.*, p. 8.

Plaintiff asserts that the vegan diet that is provided by the Department does not "qualify as kosher under Plaintiff's dietary belief."  *Id.*, p. 7.  He seems to assert that the other special diets provided at his institution are not sufficient either.  *Id.*, ¶ 22.

Plaintiff contends that his rights under the RLUIPA, the Free Exercise clause of the First Amendment, and the Equal Protection clause of the Fourteenth Amendment, have been violated.  *Id.*, pp. 12-15.  He also brings state claims under Article I, sections 2 and 3, of the Florida Constitution, and the Florida Religious Freedom Restoration Act

of 1998.  *Id.*, pp. 14-15,   Plaintiff seeks declaratory and injunctive relief, and

compensatory and punitive monetary damages, against all Defendants.  *Id.*, pp. 16-17.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to

demonstrate an absence of evidence to support the nonmoving party's case.  Celotex

Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265

(1986).  If they do so, the burden shifts to the Plaintiff to come forward with evidentiary

material demonstrating a genuine issue of material fact for trial.  *Id.*  Plaintiff must show

more than the existence of a "metaphysical doubt" regarding the material facts,

Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence is insufficient.

There must be such evidence that a jury could reasonably return a verdict for the party

bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S.Ct.

2505, 2512, 91 L.Ed.2d 202 (1986).  An issue of fact is "material" if it could affect the

outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256,

1259 (11th Cir. 2004) (citations omitted).  However, "the evidence and inferences drawn

from the evidence are viewed in the light most favorable to the nonmoving party, and all

reasonable doubts are resolved in his favor."  WSB-TV v. Lee, 842 F.2d 1266, 1270

(11th Cir. 1988); Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999) ("We

are required to resolve all reasonable inferences and facts in a light most favorable to

the nonmoving party.").

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by

her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v.</u> <u>Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

**Defendants' evidence**

Defendants state that in their "Statement of Facts" that it is undisputed that:

Plaintiff expressed his desired for kosher meals to Defendants through the inmate grievance procedure system, and specifically requested that he be allowed to participate in the now defunct Jewish Dietary Accommodation Program (hereinafter JDAP).  Plaintiff claimed in his grievances that participating in the JDAP would satisfy his desire for a kosher diet.

Plaintiff was informed in various responses to h is grievances that the JDAP was available only to Jewish inmates. . . .

Doc. 53, p. 2.

Defendants also further assert that the JDAP was amended in 2006 "to allow inclusion of other faith-based groups than Jewish, who requested kosher diets as part of their religious exercise." *See, e.g.*, doc. 1, Ex. B; p. 25 on the electronic docket (ECF). Defendants say that "Plaintiff apparently never sought inclusion based on the revised policy or grieved thereunder."  Doc. 53, p. 3.  On August 16, 2007, the Jewish kosher meal plan was discontinued.  Doc. 53, Ex. A; doc. 53-2, p. 1.  Pork has also been discontinued throughout the entire prison system.  *Id*.  Today, Plaintiff is provided the following dietary choices:  the alternate entree meal, which provides a pork-free lacto-

ovo or lacto-vegetarian diet, or the vegan (strict vegetarian) meal that avoids all animal food products. *Id.*, Exs. A, B and E; doc. 53-2, pp. 2-3, 14.

Defendants have filed the affidavit of Kathleen Fuhrman, Public Health Nutrition Program Manager for the Florida Department of Corrections. Doc. 53, Ex. C; doc. 53-2, p. 4. Ms. Fuhrman states that it would be "cost prohibitive" to supply Seventh-Day Adventist prisoners with kosher meals. *Id.*; doc. 53-2, p. 5. Frozen or shelf-stable kosher entrees cost $4.00 to $4.50 per meal, and additional foods would be needed to ensure nutritional adequacy. Additional cost would be incurred for disposable containers. As a consequence, the cost to feed a prisoner a kosher diet is about $15.00 per day. *Id.* In comparison, other prisoners are fed for about $2.67 a day. *Id.* Ms. Fuhrman estimates that the annual cost to feed a kosher diet would be $5,475.00 per prisoner compared to from $952.65 to $974.18 annually for other prisoners. *Id.*, p. 6.

As of August 13, 2007, 390 prisoners indicated that they are Seventh-Day Adventists, 3,390 are Muslim, and 3,340 indicate they are of the Jewish faith. *Id.*, p. 7. If these 7,120 prisoners were to be provided a kosher diet to meet their religious dietary needs, the Florida Department of Corrections would incur an additional food cost of $38,982,000 per year. *Id.*

Ms. Fuhrman states that these are not all of the costs. *Id.*, p. 6. Additional costs may be incurred, states Ms. Fuhrman, based upon the costs related to quantities of kosher food ordered, shipping costs, and handling fees; the estimated costs above excluded those costs. *Id.* Ms. Fuhrman also states that the vendors who provide a frozen kosher meal do not provide a meal that is nutritionally complete, and those meals must be supplemented with other food at the prison. *Id.* She explains that packaged

kosher meals provide 400 to 450 calories per meal, and two such meals provide less than one-half of the calories served daily to the general prison population.  *Id.*, p. 7. These kosher meals would have to be supplemented with eggs, fruits, vegetables, cereal, juice, peanut butter, and similar foods.  *Id.*  The supplemental foods would have to be prepared and stored separately from the non-kosher foods.  *Id.*

Defendants have also filed the affidavit of James Upchurch.  Doc. 53, Ex. D.  Mr. Upchurch is the Chief of the Bureau of Security Operations.  *Id.*; doc. 53-2, p. 9.  Mr. Upchurch states that providing a kosher diet "would be seen by the rest of the inmates as preferential treatment resulting in a negative impact on morale and subsequently the institutional environment and orderly operation."  *Id.*, p. 10.  Additionally, says Mr. Upchurch, when the Department generally provided the Jewish kosher diet, there were extensive reports that other prisoners claimed to be of that faith so that they could receive the preferential diet, believing that the diet provided food of better quality or quantity.  *Id.*, p. 11.  Mr. Upchurch said that to control costs, the Department would create special kosher kitchens at only a few institutions, but gang members would attempt to manipulate the system by claiming to be of that faith to gain assignment to those institutions and, by so doing, come together.  *Id.*  Further, said Mr. Upchurch, prisoners receiving the non-kosher diet could think that the quality and quantity of their food had suffered due to the much higher cost of the kosher diet, causing a risk of retaliation and disruptions.  *Id.*  Finally, the staffing level for those responsible for security in kitchens is already at a bare minimum, and assigning the additional duty to maintain and secure the kosher area of the kitchen would distract kitchen personnel from their duties.  *Id.*

A third affidavit is provided by Alex Taylor, Chaplaincy Services Administrator.

Doc. 53, Ex. E; doc. 53-2, p. 13. Mr. Taylor served ten years in prison chaplaincy for

the Texas Department of Corrections, and has been in his current position in Florida for

nine years. *Id.* He states that he has also studied the religious needs of Seventh-Day

Adventists. *Id.*, p. 14. Mr. Taylor states that for over 100 years, Seventh-Day

Adventists have advocated a vegetarian diet, that is, a lacto-ovo vegetarian diet similar

to the vegan diet provided by the Department. *Id.* That diet contains no animal

products, and does not include egg or milk products. *Id.* Mr. Taylor states that the

vegan diet better serves the needs of a Seventh-Day Adventist than the Jewish kosher

diet because the Jewish kosher diet includes meat. *Id.*

**Plaintiff's evidence**

Plaintiff did not submit any evidence in response to Defendants' motion for

summary judgment. Doc. 79. Plaintiff simply argued that the legal issues require

consideration of factual issues. *Id.*

Plaintiff did submit evidence in connection with his own motion for summary

judgment. Attached to Plaintiff's most recent motion for summary judgment is a

settlement agreement between the Secretary of the Florida Department of Corrections

an Alan J. Cotton, a prisoner at Everglades Correctional Institution. Doc. 70, Ex. A; doc.

70, pp. 7-12. The settlement agrees to provide inmate Cotton with a kosher diet. *Id.*

The settlement agreement was in case number 02-22760-CIV-MOORE in the Southern

District of Florida. *Id.*, p. 7. The settlement states that it was a compromise of claims

and was not an admission of liability by the Department. *Id.* The agreement is dated

October 15, 2003. *Id.*, p. 11. In support of Plaintiff's motion for summary judgment,

Plaintiff points first to this settlement agreement with inmate Cotton.  Doc. 71, ¶ 2.

Plaintiff also relies upon his own affidavit and the attachments to his complaint.  *Id.*, ¶ 3.

On January 30, 2004, Pastor Maxwell T. Berkel, of the Perrine Seventh-Day

Adventist Church, wrote to Chaplain Lam on behalf of Plaintiff and nine other prisoners.

Doc. 36, Ex. A; doc. 36, p. 19.  Pastor Berkel asked those prisoners be allowed to

abstain from eating certain meats as outlined in the Bible in Leviticus and Numbers, and

that meats clean for human consumption be served kosher style, without blood or fat.

*Id.*  There was no mention of any other aspect of a kosher diet for a Seventh-Day

Adventist, and no mention of the Jewish kosher dietary plan.  Plaintiff asserts, and it will

be accepted as true, that Chaplain Lam did not respond to the letter.

On June 15, 2004, Pastor Berkel wrote a similar letter to then Secretary Crosby.

Doc. 73, p. 3.  Again, Pastor Berkel only mentioned the need to avoid certain meat.  He

said:  "As Adventist we do not eat pig meat in no form or fashion, nor crab, conks

[conchs], lobster and others of their kind as mention in the Holy Word, the Bible."  *Id.*

Plaintiff states in his affidavit that he has been denied a kosher diet as alleged in

paragraphs 27 through 47 of his amended complaint.  Doc. 66, ¶ 2.  He asserts that the

Department does not provide a kosher diet to meet the needs of Seventh-Day

Adventists like himself.  *Id.*, ¶ 5.

Plaintiff has also presented the affidavit of Alan Cotton.  Doc. 67.  Cotton states

that he receives "Glatt Kosher Meals" in accordance with the settlement noted above.

*Id.*, ¶ 1.  The other statements in the affidavit either are opinions by Cotton for which

there has been no evidence of expertise, or the relevance of which is not apparent.  An

example of an irrelevant statement, Cotton states that "A typical breakfast is dry cereal,

oatmeal, and peanut butter.  The personnel in food service are quick to say, 'drink

water' 'eat dry cereal.' "  *Id.*, ¶ 4.  Perhaps this is related to the sentence before this, that

the lacto-ovo vegetarian meal "does not have soy or other vegetarian milks, or bread,"

but none of this is explained.

Plaintiff has also filed the affidavit of Kevin Jones.  Doc. 74.  Jones, who is also a

prisoner, states that he is a Seventh-Day Adventist, and that while in the Broward

County Jail, he received a kosher diet, but while in state prison, he has not been

provided a kosher diet.  *Id.*, ¶¶ 1-3.

**Undisputed facts**

Neither party has disputed the other's evidence.  Thus, both presentations will be

accepted as true on these motions for summary judgment.

**Legal analysis**

**RLUIPA dietary claim**

As explained in <u>Smith v. Allen</u>, 502 F.3d 1255 (11th Cir. 2007), the RLUIPA:

> states that "[n]o government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to an institution . . .
> even if the burden results from a rule of general applicability," unless the
> government can demonstrate that the burden "is in furtherance of a
> compelling governmental interest" and "is the least restrictive means of
> furthering that compelling governmental interest."  42 U.S.C. §
> 2000cc-1(a).  Section 3 of RLUIPA thereby affords to prison inmates a
> "heightened protection from government-imposed burdens," by requiring
> that the government demonstrate that the substantial burden on the
> prisoner's religious exercise is justified by a compelling, rather than merely
> a legitimate, governmental interest.  *See Warsoldier v. Woodford*, 418
> F.3d 989, 994 (9th Cir. 2005) (citation omitted).  In doing so, section 3
> affords confined persons "greater protection of religious exercise than
> what the Constitution itself affords."  *Lovelace v. Lee*, 472 F.3d 174, 186
> (4th Cir. 2006).  Section 3 applies whenever "the substantial burden on
> religious exercise is imposed in a program or activity that receives federal
> financial assistance."  42 U.S.C. § 2000cc-1(b)(1).

502 F.3d at 1266.  Thus,

> To establish a *prima facie* case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened.  *See Adkins*,[1] 393 F.3d at 567; 42 U.S.C. § 2000cc-1(a).  The plaintiff "bear[s] the burden of persuasion on whether the . . . government practice that is challenged by the claim substantially burdens the exercise of religion."  42 U.S.C. § 2000cc-2(b).  If the plaintiff succeeds in demonstrating a *prima facie* case, the government must then demonstrate that the challenged government action is "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b).

502 F.3d at 1276.

That a compelling state interest is required by the RLUIPA does not mean that

courts should no longer give substantial deference to the decisions of prison

administrators.  In Cutter v. Wilkinson, 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020

( 2005), the Supreme Court said:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety.  Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.  In *Caldor*,[2] the Court struck down a Connecticut law that "arm[ed] Sabbath observers with an absolute and unqualified right not to work on whatever day they designate[d] as their Sabbath."  472 U.S., at 709, 105 S.Ct. 2914.  We held the law invalid under the Establishment Clause because it "unyielding[ly] weigh[ted]" the interests of Sabbatarians "over all other interests."  *Id.*, at 710, 105 S.Ct. 2914.
>
> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns.  While the Act adopts a "compelling governmental interest" standard, *see supra*, at 2118, "[c]ontext matters" in the application of that standard.  *See Grutter v. Bollinger*, 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304

---

[1] Adkins v. Kaspar, 393 F.3d 559, 566 (5th Cir. 2004).

[2] Estate of Thornton v. Caldor, Inc., 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985).

(2003).  Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions.  *See, e.g.*, 139 CONG. REC. 26190 (1993) (remarks of Sen. Hatch).  They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  Joint Statement S7775 (quoting S.Rep. No. 103-111, at 10, U.S.CODE CONG. & ADMIN.NEWS 1993, pp. 1892, 1899, 1900).

544 U.S. at 722-723, 125 S.Ct. at 2122-2123 (footnotes omitted).

### Plaintiff's *prima facie* case

"[T]o constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice."  Smith v. Allen, 502 F.3d at 1277. That question turns, in part, upon the degree to which the particular practice has been shown by the plaintiff to be fundamental to the exercise of the particular religion such that the denial of it would cause "more than an inconvenience on [his] religious exercise."  502 F.3d at 1278 (quoting Midrash, 366 F.3d at 1227).

Defendants have not disputed that the kosher diet sought by Plaintiff is a sincerely held tenet of his religion and that their failure to provide such a diet to him substantially burdens his religious practice.  Plaintiff has set forth a *prima facie* basis for his RLUIPA claim.  The burden shifts to Defendants to show a compelling state interest and that the decision not to provide a kosher diet to Plaintiff as requested is the least restrictive means of serving that compelling interest.

### Compelling interest and least restrictive means

In Baranowski v. Hart, 486 F.3d 112 (5th Cir.), *cert. denied*, 128 S.Ct. 707 (2007), the court had before it similar claims, a First Amendment free exercise claim, and Equal Protection claim, and a RLUIPA claim concerning a Jewish kosher diet for a

Texas prisoner.  Applying the RLUIPA, the court found that a Jewish kosher diet was a valid exercise of the prisoner's religious belief and that failure to provide the diet substantially burdened his free exercise of that belief.  486 F.3d at 124-125.

The court held, however, that the RLUIPA was not violated because the "dietary policy of not providing kosher meals is the least restrictive means of furthering a compelling governmental interest."  *Id.*, at 125.  The court quoted from an affidavit submitted by the Director of the Texas Chaplaincy Department, which stated:

> TDCJ has determined that it would be far too costly and would far exceed the allotted budget to provide kosher food.  No TDCJ unit is currently set up to accommodate a kosher diet, which requires food preparation under certain ritual requirements and without contact with non-kosher food.  Given the small number of offenders identifying themselves as Jewish (and the small number recognized as practicing Jews by TDCJ Jewish authorities), and their various classification and programmatic needs, at least several units would have to remodel their kitchens and substantially alter food preparation procedures.  Kosher meals also are very costly.  *The state of Florida has reported that it costs them between 12 and 15 dollars per day per offender to provide kosher meals* compared with $2.46 per day the State of Texas pays for offender meals.  Providing kosher meals for a very small subset of offenders would place a tremendous burden on the ability of TDCJ to provide a nutritionally appropriate meal to all other offenders because of the budgetary impact alone.  Furthermore, due to budget deficits, the Texas Legislature at the last legislative session specifically targeted inmate food services for a mandatory reduction in the biennial [budget] of more than $6 million.  Providing kosher meals would put a great strain on an already strained system, and would raise resentment among other inmates because payments for kosher meals would of necessity come out of the general food budget for all inmates.  The problem would be compounded because inmates of other faiths would seek similar privileges.

*Id.*, at 117 (emphasis added).  The court reasoned:

> The uncontroverted summary judgment evidence submitted by Defendants establishes that TDCJ's budget is not adequate to cover the increased expense of either providing a separate kosher kitchen or bringing in kosher food from the outside; that TDCJ's ability to provide a nutritionally appropriate meal to other offenders would be jeopardized

(since the payments for kosher meals would come out of the general food
budget for all inmates); that such a policy would breed resentment among
other inmates; and that there would be an increased demand by other
religious groups for similar diets.

*Id.* The court affirmed the trial court's grant of summary judgment to Defendants as to

this RLUIPA claim.

The undisputed evidence before this court is exactly the same. The cost would

be far too great, special treatment for Plaintiff would generate unrest among other

prisoners, and would create a significant security risk. Deference should be given these

prison administrators. <u>Cutter v. Wilkinson</u>, *supra.*

The cost is far too great when compared to the cost to feed other prisoners.

Muslim, Jewish, and Seventh Day Adventist prisoners would have to be treated equally,

and there are about 7,120 such prisoners in the Florida Department of Corrections. The

Florida Department of Corrections would incur an additional food cost of nearly thirty-

nine million dollars per year if it were to provide Plaintiff with the kosher diet he seeks

because that diet, or one similar, would have to be provided to all 7,120 prisoners. This

does not include costs related to quantities ordered, shipping costs, handling fees, and

supplemental food necessary to provide the other one-half of the calories needed to

provide an adequate diet.

The security problems that would be created by having to provide a kosher diet

to Plaintiff are also significant. Prisoner morale would be harmed if Plaintiff and others

received special treatment with respect to the food provided to them. Prisoners would

falsely claim to be of the faiths allowed to have a kosher meal, just so that they could be

treated the same. Prisoners would blame the kosher meals, which are far more

expensive, for causing their non-kosher meals to be less in quantity and quality.  Only a few institutions would be provided kosher kitchens, and gang members would manipulate the system to try to get into those few institutions.  Staffing in kitchens is already strained, and having to keep another area of the kitchen secure would make a bad condition worse.

Defendants have shown that there is no less restrictive alternative.  Either Plaintiff is provided the full diet he seeks or not.  To provide the full diet implicates all of the cost and security concerns discussed above.

Consequently, Plaintiff has failed to come forward with evidence to prove his RLUIPA kosher diet claim.  Summary judgment should be entered in favor of Defendants.

**First Amendment free exercise claim**

The most important case on the exercise of religious rights in prison is O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).  The case involved a Muslim prisoner who was assigned to work outside the prison.  He wanted to be brought back inside the prison at noon on Fridays so that he could attend the congregational prayer required of him, known as Jumu'ah.  482 U.S. at 345-346, 107 S.Ct. at 2402-2403.  The Court held that while prisoners retain First Amendment rights, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  482 U.S. at 348, 107 S.Ct. at 2404, *quoting* Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).  The Court said:

> In considering the appropriate balance of these factors, we have often
> said that evaluation of penological objectives is committed to the
> considered judgment of prison administrators, "who are actually charged
> with and trained in the running of the particular institution under
> examination."  To ensure that courts afford appropriate deference to
> prison officials, we have determined that prison regulations alleged to
> infringe constitutional rights are judged under a "reasonableness" test less
> restrictive than that ordinarily applied to alleged infringements of
> fundamental constitutional rights.  We recently restated the proper
> standard:  "[W]hen a prison regulation impinges on inmates' constitutional
> rights, the regulation is valid if it is reasonably related to legitimate
> penological interests."  This approach ensures the ability of corrections
> officials "to anticipate security problems and to adopt innovative solutions
> to the intractable problems of prison administration," and avoids
> unnecessary intrusion of the judiciary into problems particularly ill suited to
> "resolution by decree."

482 U.S. at 349-350, 107 S.Ct. at 2404-2405 (citations, including Turner v. Safley, 482

U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), and footnotes omitted).

The reasonableness test, therefore, is more favorable to Defendants than the

compelling state interest test of the RLUIPA.  Smith v. Allen, 502 F.3d at 12566 (the

RLUIPA "affords confined persons greater protection of religious exercise than what the

Constitution itself affords") (citation and quotation marks omitted).  Since Defendants

should prevail on the RLUIPA claim, they should prevail on the First Amendment claim.

Defendants have shown that their failure to provide Plaintiff with a kosher diet is

reasonably related to legitimate penological interests.  Summary judgment should be

granted to Defendants on the First Amendment claim.

**Equal protection claim**

Plaintiff's Equal Protection claim, liberally construed, has two premises.  First

Plaintiff alleges that inmate Cotton, a Jewish prisoner, is provided a kosher diet

pursuant to the settlement agreement, but he is not.  Doc. 84, p. 2.  He also generally

alleged in his complaint that Jewish prisoners were provided a kosher diet, but he was not even though he requested to be included in 2004.  Doc. 36 (amended complaint), ¶ 27.

> To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986).

Sweet v. Secretary, Dept. of Corrections, 467 F.3d 1311, 1318-1319 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 2139 (2007).

Plaintiff is not similarly situated with inmate Cotton.  The kosher diet now provided to Cotton was the result of a settlement of a suit, without any admission of liability.  Plaintiff is not similarly situated to Cotton.  Defendants are entitled to summary judgment on the Equal Protection claim with respect to inmate Cotton.

Plaintiff also contends that Defendants denied him Equal Protection by providing a kosher diet to Jewish prisoners, but failing to provide such a diet to him.  Defendants contend that the termination of the Jewish dietary program renders this aspect of Plaintiff's Equal Protection claim moot.  Doc. 53, p. 15.

This claim is moot with respect to declaratory and injunctive relief.  To have standing to obtain prospective injunctive relief, Plaintiff must show that his injury is "actual or imminent, not conjectural or hypothetical."  Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 211, 115 S.Ct. 2097, 2104, 132 L.Ed.2d 158 (1995); Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994).  "[T]he fact of past injury, 'while presumably affording [the  plaintiff] standing to claim damages . . ., does nothing to

establish a real and immediate threat that he would again' suffer similar injury in the future."  Adarand, quoting Los Angeles v. Lyons, 461 U.S. 95, 105, 103 S.Ct. 1660, 1667, 75 L.Ed.2d  675 (1983).  The claimant must show "a sufficient likelihood that he will again be wronged in a similar way."  Lyons, 461 U.S. at 111, 103 S.Ct. at 1670. Plaintiff has not shown that it is likely that Defendants will initiate another Jewish dietary program in the future, but will exclude him.  Plaintiff's claims for prospective equitable relief are moot.

The claim for monetary damages against Defendants, however, is not moot.  A claim for monetary damages in their official capacities is barred by the Eleventh Amendment,[3] but a claim against Defendants in their individual capacities is permitted and is not mooted by a change in the policy since the claim relies upon past events.

Defendants contend that Plaintiff is not entitled to compensatory or punitive damages as a matter of law.  Plaintiff cannot recover for monetary or punitive damages against any Defendant in their individual capacities unless he shows physical injury. Smith v. Allen, 502 F.3d at 1271, citing 42 U.S.C. § 1997e(e).[4]  Plaintiff can, however, sue for nominal damages.  Id.

Plaintiff did not allege in his amended complaint that he suffered any physical injury from the denial of participation in the Jewish kosher diet program.  Doc. 36 (amended complaint).  Plaintiff now argues that during the time that the Jewish diet was

---

[3] Harbert Intern. v. James, 157 F.3d 1271, 1277-78 (11th Cir. 1998).

[4] The court cited § 1997(e) but intended to cite § 1997e(e), which provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

in effect and he was not permitted to participate, he lost more than 25 pounds and had

to live on Ensure.  Doc. 89, p. 2.  Even though not in proper form, this allegation will be

liberally construed as a potential motion to amend the complaint.  It will also be

assumed that Plaintiff could present this evidence of weight loss at trial.  But weight loss

is not sufficient injury to satisfy the injury requirement of 42 U.S.C. § 1997e(e).

Shaheed-Muhammad v. Dipaolo, 138 F.Supp.2d 99, 110 n.31 (D. Mass. 2001) (fatigue,

weight loss, and one episode of fainting resulting in a minor head injury are insufficient);

Porter v. Coombe, 1999 WL 587896, *3 (S.D. N.Y. 1999) (prisoner's § 1983 claim for

lost 25 pounds due to restricted diet did not allege a sufficient physical injury); Plasencia

v. California, 29 F.Supp.2d 1145, 1152 (C.D. Cal. 1998) (weight loss insufficient to

constitute physical injury).  Consequently, this proffer is not enough to save Plaintiff's

Equal Protection claim for compensatory or punitive damages.  Since Plaintiff has not

come forward with sufficient evidence to support such a claim, Defendants are entitled

to summary judgment in their favor to this extent.

Defendants have not addressed the merits of a potential Equal Protection claim

for nominal damages against Defendants in their individual capacities.  Crosby cites the

correct case law but does not mention a claim for nominal damages.  Doc. 87.  The

other Defendants also cite the correct case law and do not mention a potentially viable

claim for nominal damages.  Doc. 88.  The other Defendants advise the court that they

addressed this Equal Protection claim in their Memorandum in Opposition to Plaintiff's

Motion for Summary Judgment.  Doc. 88, p. 4, citing doc. 76.  Document 76, however,

does not address the issue of treating Jewish prisoners differently from Plaintiff during

the time that the Jewish diet was in operation.  Doc. 76.

Plaintiff did not make an explicit demand for nominal damages in his complaint. Doc. 36, pp. 16-17.  He alleged entitlement only to compensatory and punitive damages.  *Id.*  Still, this court must consider whether a pro se litigant's complaint may be liberally construed to seek nominal damages.  <u>Frazier v. McDonough</u>, 264 Fed.Appx. 812, *2 (11th Cir. 2008) (not selected for publication in the Federal Reporter, No. 07-13986).  Plaintiff did seek "such other relief as this Court may deem just and appropriate."  *Id.*, p. 17.  The court should construe the complaint liberally as seeking nominal damages.

There seem to be no genuine disputes of material fact here, and no reason for the expense of a trial as to this last claim.  Plaintiff has shown without dispute that in 2004 he sought to participate in the Jewish kosher diet program but was denied that opportunity.  Doc. 36, ¶ 27 and doc. 66, ¶ 2 (verifying the allegation in the complaint). Defendants have agreed that in his grievances, Plaintiff advised Defendants, or at least some of them, that his religious needs would have been satisfied had he been allowed to take the Jewish kosher diet during the time it was available.  The undisputed facts are that had Plaintiff listed "Jewish" as his faith in 2004, he would have been allowed to partake of the kosher diet, but since he listed "Seventh Day Adventist," he was not.  He was excluded, therefore, because of his religious beliefs.

Defendants represent that in 2006, the requirement that Plaintiff be of the Jewish faith to participate in the Jewish dietary program was rescinded, and he could have applied again for permission to partake of that diet and did not.  It is unnecessary to fine-tune the facts, however, as it is undisputed that prior to this change, that is, in 2004, Plaintiff sought to participate and was denied due to has particular religious faith.

Plaintiff is entitled to nominal damages without regard for the length of time that he was treated differently due to his faith.

Plaintiff has shown that he was similarly situated with Jewish prisoners during the period that the Jewish kosher diet was in operation.  Defendants have not argued any basis for treating Plaintiff differently from the Jewish prisoners during this period other than the fact that Plaintiff was a Seventh Day Adventist.  The court, therefore, should grant Plaintiff's motion summary judgment to this extent and award a nominal judgment of $1.00, jointly and severally against all Defendants.[5]

**State law claims**

Plaintiff brings two state law claims.  The first is an equal protection claim under Article I, Section 2, of the Florida Constitution.  Doc. 36, p. 15 (Count V).  The second is a claim of violation of the Florida Religious Freedom Restoration Act of 1998.  *Id.*, (Count VI).

Section 1367(c)(1) of 28 United States Code provides that this court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – (1) the claim raises a novel or complex issue of State law . . . " 28 U.S.C. § 1367(c)(1).  This court should not exercise jurisdiction to interpret the Florida Constitution in this instance, particularly since neither side has addressed the complexities of the two state sources of law.  *See, e.g.*, Warner v. City of Boca Raton, 887 So.2d 1023, 29 Fla. L. Weekly S454 (Fla. Sep 02, 2004) (answering a complex question under the Florida Religious

---

[5] Defendants have not sought to distinguish their potential liability by arguments concerning a causal connection to the constitutional violation.

Freedom Restoration Act of 1998 certified to the Florida Supreme Court by the Eleventh Circuit).

**Conclusion**

Accordingly, it is **RECOMMENDED** that:

1.  Defendants' motion for summary judgment, doc. 53, be **GRANTED in part** as to all claims except the Equal Protection claim for nominal damages, and as to that, be **DENIED**.

2.  Plaintiff's motion for summary judgment, doc. 70, be **DENIED in part** as to all claims except the Equal Protection claim for nominal damages as to which the motion be **GRANTED** and the Clerk **DIRECTED** to enter a nominal judgment for Plaintiff against all Defendants, jointly and severally, in the amount of $1.00, and costs.

**IN CHAMBERS** at Tallahassee, Florida, on June 26, 2008.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**